CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
/s/ Danville
FEB 02 2005
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TERESA N. IRVIN, | ) CASE NO. 4:04CV00025 |
| Plaintiff, | ) |
| v. | ) REPORT AND RECOMMENDATION |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) By: B. WAUGH CRIGLER<br>) U.S. MAGISTRATE JUDGE |
| Defendant, | ) |

This challenge to a final decision of the Commissioner which denied plaintiff's April 3, 1998 application for a period of disability, disability income benefits, and supplemental security income benefits under the Social Security Act (Act), as amended, 42 U.S.C. §§ 416, 423 and 1361 *et seq.*, is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth findings, conclusions and recommendations for the disposition of the case. The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand the case for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter REVERSING the Commissioner's final decision, granting judgment to the plaintiff, and remanding the case to the Commissioner for the sole purpose of calculating benefits.

In a decision dated January 19, 1999, an Administrative Law Judge (Law Judge) found that plaintiff was not disabled. (R. 213-219.) Plaintiff appealed, and by Order of the Appeals Council entered on August 9, 2002, the decision was vacated and the case was remanded to another Law

1

Judge with direction to the Law Judge to obtain updated medical information, consider the treating and examining source information, further evaluate plaintiff's subjective complaints, further evaluate plaintiff's mental impairments and consider the plaintiff's maximum residual functional capacity, all the while providing a rationale with "specific references to evidence of record in support of the assessed limitations." (R. 226-227.)

In a decision eventually adopted as a final decision of the Commissioner, the second Law Judge found that plaintiff met the special earnings requirements of the Act through the date of his decision, and that plaintiff had not engaged in any substantial gainful activity since the alleged onset of disability. (R. 19-20.) Recognizing the virtual plethora of additional evidence relating to plaintiff's mental status, the Law Judge concluded that plaintiff suffered severe impairments of the back and legs as well as a severe Somatoform disorder and depression, but that none of plaintiff's physical and mental impairments, alone or in combination, met or equaled any listed impairment. (R. 25, 26, 32.) Interestingly, the Law Judge determined that plaintiff was not limited in any way by her mental impairments, though he found she was not able to perform her past relevant work as a sander and floater in a furniture factory. (R. 19, 28, 30, 31, 33.) Further finding that plaintiff's allegations regarding the limitations imposed by her impairments were not fully credible due to what he saw as inconsistencies and lack of support in the medical records, the Law Judge concluded that plaintiff possessed the residual functional capacity to perform jobs in what a vocational expert (VE) testified would be at the sedentary exertional level. (R. 28, 32, 33.) Relying on the Medical-Vocational Guidelines ("grids") as to plaintiff's exertional limitations, and by accepting some, but not all of the testimony of a vocational expert (VE), the Law Judge found that jobs were available to the plaintiff in the economy. (R. 32-33.) Accordingly, he concluded that plaintiff was not disabled under the Act. (R. 33.) The Appeals Council denied review, and this action ensued. (R. 7-9.)

2

It is of note here that plaintiff's physical disorders are not in dispute. Several treating physicians, as well as the state agency's own consultative examiner, diagnosed the claimant as having chronic nonspecific low back pain, a mild degenerative disk disease of L4-L5, a chronic gait disorder, and carpal tunnel syndrome. (R. 126, 127-128, 157, 165, 289.) Even the Law Judge found plaintiff suffered severe back and neck impairments. By the same token, there is some question presented in the evidence about the cause or origin of plaintiff's chronic back and leg disorders. The key inquiry here involves the degree to which plaintiff's mental status impacts her residual functional capacity. This is so because her low back pain and gait disorders likely have psychogenic origin, the essential factor acknowledged by the Appeals Council as precipitating remand and by the Law Judge when he considered plaintiff's residual functional capacity. (R. 29.)

Plaintiff's counsel arranged a psychological examination by Samuel J. Fletcher, Ph.D. in August 1998. In this assessment, Dr. Fletcher noted that plaintiff gave inarticulate answers to his questions and frequently was not coherent. (R. 180-181.) On the Wechsler Adult Intelligence Scale - Third Edition (WAID-III) claimant earned a verbal IQ of 73, Performance IQ of 85, and a Full Scale IQ of 77, placing her in the Borderline range of intellectual functioning. (R.183.) In his summary, Dr. Fletcher revealed that plaintiff was functionally illiterate, with her verbal skills being more impaired than her performance ability. (R. 184.) He then noted in his diagnosis that she scored a 50 on the Global Assessment of Functioning (GAF) Scale. (R. 185.)[1]

However, a Psychologist Report performed in 1999 by a state agency consultative examiner seems to have produced a very different result. Throughout the entire report, Dana R. Blackmer, Ph.D., presents her "estimation" that plaintiff appeared to be functioning in the high-end of the

---

[1] According to the GAF Scale, a person scoring a 50 would have serious impairments in social, occupational, or school functioning, manifesting in serious symptoms.

3

borderline range, with fair short-term and long-term memory, fair sustained concentration and attention, good ability to understand and follow through with simple instructions, and fair ability to understand and follow through with complex instructions. (R. 254-255.) This was based entirely on plaintiff's word knowledge and ability to "do mental arithmetic." (R. 254.) Furthermore, Dr. Blackmer reported a GAF score of 65, which places the degree of her limitations in the moderate, as opposed to serious, range. (R. 256.)

Of course, both the plaintiff's and the state agency examinations predated the decision by the first Law Judge which was vacated. Yet, the last Law Judge certainly gave Dr. Blackmer's report "great weight" in finding that plaintiff was not "limited in any way by a mental impairment." (R. 28.) Interestingly, Dr. Blackmer did no clinical testing, and to reiterate, her views were based entirely on her "estimation" resulting from viewing "recent intellectual testing performed by another examiner." (R. 255.)

On October 5, 2002, plaintiff was seen by another state agency consultative examiner, Blanche Williams, Ph.D. Dr. (R. 294-299.) Dr. Williams confirmed that plaintiff's intellectual function was in the borderline range, and that she was "illiterate and unskilled in all academic areas." (R. 299.) While she believed that plaintiff was able to do some things to care for family members, perform household chores, and run errands in the car, it was unlikely, in Dr. Williams' view, that she could "maintain regular work attendance without significant interruption due to her psychiatric and cognitive disabilities." (*Id.*) According to this state agency examiner, "The ususal stresses of competitive work are more than she can cope with adequately at this time." (*Id.*) Finally, Dr. Williams was of the view that plaintiff's GAS score was 45, corroborating that assessed by plaintiff's consultative examiner. (*Id.*)

Because the pre-remand reports from those who has examined plaintiff's mental status were

4

divergent, the undersigned cannot help but think that the Appeals Council sought confirmation of that mental status, one way of the other, when it remanded the case for further evidentiary development and a new decision by a different Law Judge. The results of the latest consultative examination certainly confirm that which had been offered on plaintiff's behalf all along, and is not challenged in the supplemented record. Interestingly, the second Law Judge accorded Dr. Williams' report "little weight" apparently on the basis that plaintiff held her job with Lane company for such a long period of time, and that if Lane still had the sedentary position available, plaintiff "would not have been laid off." (R. 29.) He further rejects Dr. Williams' opinion about plaintiff's functional capacity on the ground that "[t]he record does not indicate that the claimant's ability to function is as limited as the psychologist has indicated." (*Id.*) He takes this view solely based upon his understanding of plaintiff's daily activities and the fact that plaintiff reported "feeling happy most of the time" and was "quite cooperative [with the examiner], and displayed a "friendly manner and adequate attention and effort." (*Id.*)

Rather than issuing a decision displaying a proper evaluation of plaintiff's mental impairments and providing an appropriate rationale for his assessment of plaintiff's functional capacity, the Law Judge appears simply to have engaged in a reprise of the first Law Judge's decision and, at best applied "sit and squirm" decision-making to arrive at his conclusion that plaintiff was not disabled. *Lewis v. Bowen*, 823 F.2d 813 (4th Cir. 1987). At worst, the law Judge substituted his judgment for that of the consultative expert. According to the vocational testimony, even if plaintiff could perform light work with a sit/stand option, no jobs would be available to such a person with a GAF of 50 or below. (R. 357-358.) Certainly, no jobs would be available to a person who was limited to sedentary work, as the Law Judge found to be limited, and who had a GAF of 50 or less. The only way for the Law Judge to have concluded that plaintiff was not disabled was to

5

reject the report from the very source ordered by the Appeals Council on remand.

In the end, the undersigned is of the view that the Commissioner did not meet her burden in the sequential evaluation by the substantial, if not overwhelming, evidence. For these reasons, the undersigned RECOMMENDS that an order enter REVERSING the Commissioner's final decision, granting judgement to the plaintiff and recommitting the case to the Commissioner for the sole purpose of calculating and paying proper benefits, commensurate with Dr. William's report dated October 1, 2002.

The Clerk is directed to immediately transmit the record in this case to the presiding District Judge. Both sides are reminded that pursuant to Rule 72(b) they are entitled to note objections, if any they may have, to this Report and Recommendation within (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to send a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ _____
Judge

2-2-2005
Date