CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED
MAY 0 6 2005
JOHN F. CORCORAN, CLERK
BY: H McDonald
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| TERESA N. IRVIN, | ) |
| | ) Case No. 4:04CV00025 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| JO ANNE B. BARNHART, | ) |
| Commissioner of Social Security, | ) By: Jackson L. Kiser |
| | ) Senior United States District Judge |
| Defendant. | ) |
| | ) |

Before me is the Report and Recommendation of the United States Magistrate Judge recommending reversing the Commissioner's final decision denying the Plaintiff's claim for benefits. The Defendant filed objections to the Report and Recommendation. I reviewed the Magistrate's Report and Recommendation, the Defendant's objections, the Plaintiff's responses, and relevant portions of the record. The matter is now ripe for decision. For the reasons stated below, I **REJECT** the Magistrate's recommendation and **SUSTAIN** the Defendant's objections. The Commissioner's final decision denying the Plaintiff's claim for benefits is **AFFIRMED**, and the case is hereby **DISMISSED.**

## STATEMENT OF FACTS

Plaintiff Teresa N. Irvin ("Plaintiff") is a 44-year old female with an eleventh grade education and past experience as a sander in a furniture factory. She alleges that she suffers from a back disorder and leg problems which have impaired her functional capabilities to the extent that she is disabled from all employment. Plaintiff's legs are unstable to the point that she intermittently collapses while standing or walking so that she requires the assistance of a cane. Several doctors

1

have examined Plaintiff to determine the origin of the disorder, but the majority have found nothing physically wrong and have diagnosed her problem as a psychogenic disorder.

The Plaintiff underwent a series of psychological examinations. In April 1998, Dr. Bede Pantaze of Pan-Psy Associates, Inc. examined the Plaintiff and administered the Wechsler Adult Intelligence Scale test. He found that her concentration and persistence in completing tasks was very good but that she was very difficult to understand due to a heavy dialect, garbled speech, mispronouncing, and mumbling. She obtained a full scale general intellectual functioning level, and he estimated her Global Assessment of Functioning score ("GAF") as 90.

In August 1998, Dr. Samuel J. Fletcher of Associates in Mental Health Services examined the Plaintiff and administered the Wechsler Adult Intelligence Scale test, the Wide Range Achievement Test and the Millon Clinical Multiaxial Inventory. He noted that Plaintiff was able to perform various daily tasks such as laundry, cooking, and visiting friends. Dr. Fletcher indicated that she was pleasant but frequently incoherent. The tests indicated that she was reading below the third grade level and doing arithmetic at the fifth grade level. He diagnosed Plaintiff as functionally illiterate and estimated her GAF as 50.

In February 1999, Dr. Dana R. Blackmer of the Virginia Department of Rehabilitative Services ("VDRS") examined the Plaintiff using a mental status examination and a clinical interview. He estimated the Plaintiff had borderline intellectual functioning and a GAF of 65 "based primarily on the claimant's work knowledge and ability to do mental arithmetic." Dr. Blackmer also noted that his estimation was validated by "recent intellectual testing performed by another examiner."

In October 2002, Dr. Blanche Williams of the VDRS examined the Plaintiff. Dr. Williams administered the Minnesota Multiphasic Personality Inventory and conducted a clinical interview

2

and observation of the Plaintiff. The doctor found that she could perform household tasks and simple, repetitive tasks but not for long periods of time. Dr. Williams also indicated that she would have difficulty accepting instruction from supervisors without special accommodation. She diagnosed the Plaintiff with major depression and borderline intellectual functioning. Dr. Williams also found that the Plaintiff was functionally illiterate and had a GAF score of 45.

The Plaintiff stopped working in 1998 due to her impairments and filed a claim for disability benefits. The Commissioner denied Plaintiff's claim, and an administrative law judge ("ALJ") affirmed the Commissioner's decision. Plaintiff filed an appeal with the Appeals Council for the Social Security Administration ("Appeals Council"). The Appeals Council remanded the case to a different ALJ with directions to consider a 1998 psychological evaluation, comments by Plaintiff's counsel concerning a post-hearing consultative evaluation and Plaintiff's mental impairments.

On remand, the ALJ re-examined Plaintiff's physical and mental impairments. He found that, due to her physical impairments, the Plaintiff was limited to performing work at the light exertional level with a sit/stand option. With regards to Plaintiff's mental limitations, the ALJ found that Plaintiff's ability to relate to others is good as is her ability to understand, remember, and carry out simple instructions. The ALJ also found that Plaintiff behaves in an emotionally stable manner and that her abilities to follow work rules, use judgment, deal with work stress, function independently, maintain concentration, and deal with detailed or complex instructions are fair.

In arriving at these findings, the ALJ gave great weight to the opinion of Dr. Blackmer and gave very little weight to those of Dr. Williams and Dr. Fletcher because the record was more consistent with Dr. Blackmer's findings and was buttressed by Dr. Pantaze's prior evaluation. The ALJ found that the record showed that Plaintiff was happy, cooperative and friendly which was inconsistent with major depression. The ALJ indicated that Plaintiff's ability to maintain a home

3

for her family suggested that she is not limited by her mental impairments. Furthermore, ALJ held that the fact that Plaintiff had worked for the same company for over 20 years conflicted with Dr. Williams' finding that Plaintiff was severely limited in her ability to accept supervision and attend work regularly. Finally, the ALJ stated that Plaintiff's ability to read the Bible, magazines and newspapers, pass a written driver's test, and take GED classes is not consistent with a diagnosis that she is functionally illiterate.

The ALJ proceeded through the sequential inquiry for determining disability and determined that Plaintiff could not perform her past relevant work because her past relevant work was heavy work which exceeded her exertional capacity. The ALJ found that the Medical-Vocational Guidelines could not be used to determine whether a significant number of jobs in the national economy could accommodate Plaintiff's impairments because Plaintiff suffered from some nonexertional limitations. Accordingly, the ALJ consulted a vocational expert ("VE") to determine whether a significant number of jobs existed in the national economy for a person with Plaintiff's mental limitations and which would only entail light work.

The ALJ posed three different scenarios to the VE using the three different diagnoses by Dr. Fletcher, Dr. Blackmer, and Dr. Williams. The ALJ responded that there did not exist a significant number of jobs entailing only light work for a person with the mental limitations diagnosed by Dr. Fletcher and Dr. Williams. On the other hand, a significant number of jobs would exist for a person with a mental condition as assessed by Dr. Blackmer. Giving considerable weight to Dr. Blackmer's opinion and very little weight to the opinions of Dr. Williams and Dr. Fletcher, the ALJ found that a significant number of jobs existed in the national economy which could accommodate Plaintiff so that Plaintiff was not disabled.

The Appeals Council denied review, and Plaintiff initiated this action. Upon review, the

4

Magistrate issued a Report and Recommendation which recommended reversal of the Commissioner's final decision. The Magistrate noted that Plaintiff's physical impairments were not in dispute, however, he found that the ALJ erred in his evaluation of Plaintiff's mental impairments. The Magistrate found that the ALJ improperly gave complete credit to Dr. Blackmer's diagnosis despite the facts that it predated the ALJ's first vacated decision, Dr. Blackmer did no clinical testing, and Dr. Blackmer based his views on testing performed by another examiner. The Magistrate stated that the ALJ improperly gave little to no weight to the opinion of Dr. Williams which was the only diagnosis rendered after the remand by the Appeals Council. The Magistrate further found that the Commissioner did not meet her burden in the sequential evaluation because it was not properly established that a significant number of jobs existed in the national economy which could accommodate Plaintiff's physical and mental impairments.

## ANALYSIS

### I. Standard of Review

Congress limits judicial review of decisions by the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the proper legal standard. 42 U.S.C. § 405(g); *see also Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The Fourth Circuit has further defined substantial evidence as being more than a scintilla but less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

5

evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary."

*Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

## II. The Social Security Act

It is well established that disability determinations are governed by the provisions of 20 C.F.R. § 404.1520 (2003). Under the five-step evaluation procedure, the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work; and (5) if so, whether other work exists in significant numbers in the national economy that accommodate his residual functional capacity and vocational factors. *See Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). The burden of proof remains with the claimant through the fourth step; however, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to show that other jobs exist in the national economy that the claimant can perform. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

## III. Discussion

### A. *Timeliness of the Objection*

Plaintiff has filed a motion stating that Defendant's objection is untimely. Under Rule 72(b) of the Federal Rules of Civil Procedure, a party has ten days to object to a Magistrate's report. Fed. R. Civ. P. 72(b). When the time for responding is less than eleven days, intermediate Saturdays, Sundays, and legal holidays are excluded from computation of the time period. Fed. R. Civ. P. 6(a).

When a Magistrate's report is filed electronically or by mail, a party has three additional days to respond. *See* Fed. R. Civ. P. 6(c). The Magistrate issued his Report on February 2, 2005. Taking into account intermediate weekend days, a legal holiday on Presidents' Day, and three additional days for filing, objections were due February 22, 2005. Defendant filed her objection on February 22, 2005. Therefore, her objections are timely.

### B.    *Whether Plaintiff is Disabled*

The main question before me is whether substantial evidence supports the ALJ's decision that Plaintiff is not disabled under the Social Security Act. In evaluating the Plaintiff's disability claim, the ALJ followed the sequential inquiry and found that the Plaintiff was not disabled at the last step of the inquiry because a significant number of jobs which could accommodate her impairments existed in the national economy. But the Magistrate and the Plaintiff assert that the ALJ erred in his evaluation of Plaintiff's mental impairments and the effect of those impairments on the availability of jobs in the national economy.[1]

In evaluating Plaintiff's mental impairments, the ALJ was faced with conflicting opinions from several different doctors. And, according to the VE, the availability of jobs in the national economy which could accommodate Plaintiff's impairments turned on which diagnosis was most accurate. The VE indicated that if Plaintiff's mental condition was similar to the one reflected by Dr. Blackmer's opinion, then a significant numbers of jobs were available to Plaintiff. On the other hand, if Plaintiff's mental condition was more accurately represented by the opinions of Dr. Williams and Dr. Fletcher, then an insignificant number of jobs would be available to Plaintiff.

The ALJ resolved the conflict by giving great weight to the opinion of Dr. Blackmer and

---

[1] Neither the Defendant nor the Plaintiff disputes the ALJ's finding that Plaintiff's physical impairments limited her to light work.

7

very little weight to the opinions of Dr. Fletcher and Dr. Williams because the record supported Dr. Blackmer's findings and undermined those of the other doctors. Specifically, the ALJ found that Plaintiff's past success in the work force showed that she was able to take and follow instructions over a long period of time contrary to Dr. Williams' and Dr. Fletcher's opinions. Also, Plaintiff was happy and sociable which conflicted with Dr. Williams' diagnosis of major depression. And the fact that Plaintiff attended GED classes, passed a written driver's test, and read the Bible and magazines conflicted with Dr. Williams' and Dr. Fletcher's opinions that Plaintiff was functionally illiterate. Consequently, the ALJ found that a significant number of jobs were available to Plaintiff in the national economy.

Although I would have found differently if I were reviewing the ALJ's decision *de novo*, I affirm his decision because I am required to uphold his decision if it is supported by substantial evidence. Both the Magistrate and the Plaintiff are essentially contending that the ALJ improperly weighed the evidence. But the Fourth Circuit has held that a Court may not re-weigh conflicting evidence or make credibility determinations when reviewing under the substantial evidence standard *Craig*, 76 F.3d at 589. Faced with conflicting evidence as to the extent of Plaintiff's mental impairments, the ALJ had to make a decision as to the credibility and the weight of the evidence before him, and it is not my prerogative to re-weigh the evidence. Giving the greatest weight to Dr. Blackmer's findings, I find that substantial evidence supports the ALJ's decision that Plaintiff is not disabled because a significant number of jobs in the national economy are available to Plaintiff.

8

## CONCLUSION

For reasons stated herein, I **REJECT** the Magistrate's recommendation and **SUSTAIN** the Defendant's objections. The Commissioner's final decision denying the Plaintiff's claim for benefits is **ADOPTED.**

Entered this 6th day of May, 2005.

*[signature]*
Senior United States District Judge